MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
S. H. HOUSMAN.

Decided March 26, 1910.

**Railroads—Obstructions on Right of Way—Safe Place for Loading Cars—Personal Injuries—Proximate Cause.**

In a suit against a railroad company for damages for personal injuries caused by plaintiff's team taking fright and running against a pile of posts on defendant's right of way while plaintiff was driving thereon for the purpose of unloading his wagon into a car placed on a switch for that purpose, evidence considered and held to show (1) that plaintiff saw and knew the situation and condition as it there existed when he attempted to drive between the pile of posts and the car, and that he assumed the risk of so doing; and (2) while it was the duty of the defendant to use care to have its switch yards so arranged as to prevent such injuries as might have been anticipated by a person of ordinary care and foresight, the consequences complained of by plaintiff were not such as might have been anticipated. Justice Bookhout, dissenting.

Appeal from the District Court of Collin County. Tried below before Hon. J. M. Pearson.

*Coke, Miller & Coke* and *Garnett & Hughston,* for appellant.

*Smith & Wilcox,* for appellee.—The owner of premises who induces others to come upon it by invitation, express or implied, owes to them the duty of using reasonable care to keep the premises in a safe and suitable condition. North Texas Construction Co. v. Crawford, 39 Texas Civ. App., 56; Fry v. Hillan, 37 S. W., 360; 29 Cyc., 453, and cases there cited; 21 Ency. Law, 471.

This obligation rests upon railroad companies as to persons upon station grounds by expressed or implied invitation for the transaction of business. Calcasieu Lumber Co. v. Harris, 77 Texas, 24; Houston, E. & W. T. Ry. Co. v. Grubbs, 28 Texas Civ. App., 367; Davis v. Houston, E. & W. T. Ry. Co., 29 Texas Civ. App., 42; International & G. N. R. Co. v. Neira, 28 S. W., 95; 26 Ency. Law, 509, and note 6.

RAINEY, CHIEF JUSTICE.—Appellee Housman brought this action against appellant Missouri, Kansas & Texas Railway Company to recover damages for personal injuries sustained by him through the negligence of the railway company in permitting bois d'arc posts to be piled on its right of way near cars standing on its track which caused his mules to become frightened while loading onions on one of its cars, and caused the mules to run away, throwing appellee out of the wagon and injuring him.

Missouri, K. & T. Ry. Co. of Tex. v. Housman. 103

The petition alleged, in substance, that appellee contracted to deliver on the cars at Princeton to Allen & Son some onions; that at the request of Allen & Son the appellant placed an empty car on its side track and appellee hauled a wagon load of onions to deliver to Allen & Son; that there were piled within six or eight feet of the appellant's track a lot of posts; that as he was driving in between the car, into which he was to put his onions, and the posts, the mule next to the car shied and pushed the other mule against the end of one of the posts, which caused it to become frightened and the two to run away with the wagon; that the roadway at that point was rough and caused the wagon to jostle and throw him out and under the wagon; that appellant was negligent in allowing the posts to be piled so near the track and in not furnishing a safe place for him to work; that it was negligence on the part of appellant in placing the car at said place for loading; that appellant had leased its right of way at that point for the piling of posts and the lessee had piled said posts thereon.

The appellant pleaded general and special demurrers, general denial, contributory negligence in that appellee saw and knew the situation and condition of the place before he attempted to drive in, which was open and visible to him, and that he assumed the risk; that his injuries, if any, was the result of an accident which defendant could not anticipate or foresee; that appellee's injuries were only slight and trivial, and if permanent or serious he was guilty of negligence in caring for them. Appellant also pleaded that it owned its right of way in fee; that its lessees, Aycock & Ball, were buying and shipping posts, etc., over appellant's railroad and such use of its right of way was reasonable and proper, and that said Aycock & Ball be made parties, and if judgment was rendered against it that it have judgment against Aycock & Ball.

A trial resulted in a verdict by a jury for $5000 and judgment was entered accordingly.

The evidence shows that Housman was a farmer and had contracted to deliver to Allen & Son some onions on a car at Princeton, where the appellant had a depot and switches. The appellant at the request of Allen & Son had placed an empty car for loading on its switch at Princeton. Appellant had also leased to A. J. Aycock and T. E. Ball each, portions of its right of way at Princeton for the purpose of a storage yard; no improvement to be placed nearer than six feet and six inches from the nearest rail, and said lease to terminate upon notice from the appellant. The leased property was being used by the lessees for the storing of bois d'arc posts, and each had posts stacked up in two separate piles, twelve or fourteen feet high, and about six feet and six inches from the track. There was a roadway between the track and posts which was rough, having been cut up by wagons. Housman's wagon drawn by two mules was loaded with onions which he had carried to deliver on his contract. After having the onions weighed by one Efird, he drove his team in between the car and posts, to unload in the empty car which Efird, the weigher, had pointed out as Allen & Son's car. One of the mules shied and pushed the other mule against the end of a post that stuck

out, which caused it to jump and then the team ran away and appellee was thrown from the wagon and injured. The posts were piled as such posts usually are. There were five cars standing there to be loaded, and several wagons had just driven in to be unloaded.

Housman testified: "I could see those posts all right, but I did not notice about any sticking out further than the others right then. I did not notice whether they were all stacked perfectly even or not—·of course, I looked at the posts, but didn't notice whether they were stacked even or how they were stacked, but they did not look to be even. I never saw a pile stacked up that looked to be even. I didn't pay any particular attention to them, but of course they were uneven. I did not examine them, but I saw a big pile of posts there and I saw where I was going to drive. I stopped for the other wagon to drive up and I may have looked there before I stopped. I do not mean to swear to the jury that I drove in there without ever looking where I was driving—I seen the posts and seen Mr. Evans' wagon just starting up ahead of me and that is about all I noticed. I saw the cars there, but I was just interested in where I was going with the onions and didn't pay any attention to anything else. I saw the posts there, but did not notice at that time how high they were stacked, didn't stop to take the measurements or anything, but I saw it; I didn't notice the distance between the cars and the pile of posts. I don't remember whether the cars were coupled together or not. I didn't notice the distance that the posts were from the cars, but it was not as much as a mile. I didn't pay any particular attention as to how far they were apart, but I saw the other wagon was ahead of me and had unloaded and that is what I was in there for, to unload that wagon and I didn't pay attention much to other things. I don't think anybody else told me to drive in there besides Mr. Efird. Mr. Efird was not working for the railroad, but he was weighing onions at the time and I supposed he was working for the people that bought the onions."

From which we conclude that Housman saw and knew the situation and condition as there existed and that he assumed the risk of driving in there. Housman was driving an ordinarily gentle team. There were other parts of the tracks in the depot yards where a car could have been placed for loading where the right of way was not encumbered with posts stacked.

Appellant complains of the court for refusing a special charge as follows: "You are instructed that the evidence will not support a verdict for the plaintiff and you will, therefore, return a verdict in favor of the defendant."

After considering the facts and circumstances of this case a majority of this court are of the opinion that the appellant is not liable for the injuries to the appellee. While we recognize the rule of law which imposes upon the railway company the duty to furnish a reasonably safe place for loading cars, as was being done on this occasion, still we do not think the appellant was so remiss in its duty as to make it respond in damages, especially so when we consider the acts of appellee. It was the duty of appellant to use care in having its switch yards so arranged as to prevent such injury as

might have been anticipated or foreseen by a person of ordinary care and foresight. The manner in which the appellee was hurt could not well have been foreseen. How could it be anticipated that by driving a team of gentle mules in between the cars and stacked posts one of them would shy at something (the owner does not know what), push the other mule against the end of one of the posts, which projected a few inches, making it jump and cause the team to run away and injure the owner? Appellee says: "That as he drove up he did not notice anything to frighten his team, but that he saw the cars and posts, of course, but did not think that would frighten them as they had never scared at the cars. And that it did not occur to him that they would get frightened at the cars or the posts because they had never scared before. That he did not think anything about it hardly whether he could pass through all right when he started in, that he just drove up there and stopped and seeing the other wagon was about unloaded he started to drive down, and that he did not have any idea but what he could go through safely." The beginning of the trouble was the mule shying, and this, in our opinion, was the proximate cause of the injury, and not the piling of the posts as they were. Appellant can not be held responsible for the mule shying and pushing the other mule against the posts. When appellee drove in he did not anticipate such a contingency. He was then on the ground and saw the situation. Then ought it to be held that the happening of such an accident was one which the railway company should have anticipated? We think not. In the case of Texas & P. Ry. Co. v. Bigham, 90 Texas, 223, the doctrine there laid down by Justice Gaines in an able opinion sustains, we think, the view above announced.

Nor do we think the appellee, under the circumstances, altogether free from negligence. He drove near the entrance and stopped fifteen or twenty minutes and waited for wagons to unload that were ahead of him. He saw the pile of posts and the cars, the distance between them, and that the passage was narrow. It was daylight and the situation and condition was plain and open and nothing to prevent him from seeing it. He made no request to have the car placed at a different point, or in any way objected to attempting to load the car under the existing conditions. When all the circumstances are considered, we are forced to the conclusion that appellee ought not to recover.

Whether or not appellant had the legal right to permit others to use its right of way for the purpose of storing posts, in our opinion, does not affect the liability of appellant in this case.

In view of our disposition of the case the action of the trial court with regard to Aycock and Ball becomes immaterial.

Believing the appellee has not shown a right of recovery against the appellant, and that the case has been fully developed, the judgment is reversed and here rendered for appellant.

Our Associate Justice, Mr. Bookhout, does not agree to these conclusions. He is of the opinion that the evidence raises the issue of negligence on the part of appellant in failing to furnish a reasonably safe place for the loading of the onions in the car, and that we are

not authorized, under the evidence, to disturb their finding. He is also of the opinion that the issue of contributory negligence on the part of appellee having been submitted to the jury, and they having found that he was not negligent, we are not authorized, under the evidence, to disturb this their finding. He does not think the issue of assumed risk is in the case.

*Reversed and rendered.*

Writ of error refused.